IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| **RICHARD DUNCAN,** | |
| **Plaintiff,** | **CASE NO: 2:20-cv-02295** |
| v. | **JUDGE MICHAEL H. WATSON** |
| **FRANK LaROSE, in his official capacity** As Secretary of State of Ohio, et al. | **MAGISTRATE JUDGE DEAVERS** |
| **Defendants** | |

## MOTION TO DISMISS OF DEFEDANT OHIO SECRETARY OF STATE FRANK LaROSE

Pursuant to Federal Rule of Civil Procedure 12(B)(6), Defendant Ohio Secretary of State Frank LaRose respectfully moves this Court to dismiss Plaintiff's claims against him. For the reasons explained in greater detail in the attached memorandum in support, Plaintiff's claims fail as a matter of law.

    Respectfully submitted,

    DAVE YOST
    Ohio Attorney General

    */s/ Halli Brownfield Watson*
    HALLI BROWNFIELD WATSON (0082466)
    HEATHER BUCHANAN (0083032)
    Assistant Attorneys General
    Constitutional Offices Section
    30 E. Broad Street, 16th Floor
    Columbus, Ohio 43215
    Tel: 614-466-2872; Fax: 614-728-7592
    halli.watson@ohioattorneygeneral.gov
    heather.buchanan@ohioattorneygeneral.gov

    *Counsel for Defendant Ohio Secretary of State Frank LaRose*

**MEMORANDUM IN SUPPORT**

**I.  Introduction.**

Plaintiff Richard Duncan seeks access to the November 2020 general election ballot as an independent presidential candidate.  Ohio law, specifically Ohio Rev. Code § 3513.257(A), requires Plaintiff to gather 5,000 valid signatures on his nominating petitions to qualify for the ballot.  His deadline to file his nominating petitions with the Secretary of State is August 5, 2020.  Under Ohio law, he has an entire year to gather this low number of signatures.  And, in fact, he started his efforts in July of last year.

Plaintiff has previously and unsuccessfully challenged Ohio's ballot access scheme for independent candidates after a one-year time limit was placed on his signature gathering efforts.  Another division of this court and the Sixth Circuit, in Plaintiff's prior case, upheld Ohio's law governing independent candidates' ballot access.  *Duncan v. Husted*, 125 F.Supp.3d 674 (S.D.Ohio 2015), *aff'd* 6th Cir. No. 15-4017 (Mar. 7, 2016) (attached as Def. Ex. A).  As this Court and the Sixth Circuit concluded in that case, Ohio's rules for independent candidates to obtain access to the ballot fall well-within constitutional parameters and are, in fact, less stringent that requirements the United States Supreme Court has upheld.  *Id*. at 683, Ex. A. at 3-4.

In this case, Plaintiff's theory is that the number of signatures required by law is unconstitutional as applied to him because of circumstances related to the COVID-19 pandemic.  His claims are premised on the legally incorrect notion that stay-at-home orders issued by the Director of Ohio's Department of Public Health, Dr. Amy Acton, prohibited him from continuing his signature gathering efforts.  But, as the Sixth Circuit recently noted in another similar case, that is simply not true.  These orders *never* prohibited Plaintiff from circulating his petitions.  While the threat of COVID-19 exposure has undoubtedly made his efforts more challenging recently, that threat is not caused by the Secretary or any other state actor.  The lack

1

of a causal connection between Plaintiff's alleged injury and the state action he challenges leaves him without standing and also without a viable First Amendment claim.

But, even ignoring those issues, the circumstances of the COVID-19 pandemic do not change the Sixth Circuit's previous conclusion that Ohio's independent candidate ballot access scheme is constitutional. Plaintiff's claims to the contrary fail as a matter of law.

**II.     Ohio law governing ballot access for independent candidates.**

Ohio Revised Code § 3513.257 sets forth the signature requirements and filing deadlines for nominating petitions of individuals seeking to appear on the ballot as independent candidates for local, state, and federal offices. The filing deadline and signature requirement for a nominating petition depend on the office that the independent candidate seeks.

For individuals who want to appear on the ballot as independent candidates for the office of president of the United States, the statute requires the candidates to file a nominating petition with the Ohio Secretary of State "not later than four p.m. of the ninetieth day before the day of the general election at which the president and vice-president are to be elected[.]" R.C. 3513.257. In 2020, the ninetieth day before the November 3, 2020 general election falls on August 5, 2020. The nominating petition must contain signatures of "no less than five thousand qualified electors." *Id*. Ohio law grants each independent candidate a year to collect signatures on his/her nominating petition. R.C. 3513.263 ("A signature on a nominating petition is not valid if it is dated more than one year before the date the nominating petition was filed.").

Plaintiff has been collecting signatures on his nominating petition for the last ten months—since July 31, 2019. Compl., Doc. 1, Aff. of Richard Duncan (Ex. A) ¶ 2, PageID # 9. He has been collecting signatures "about 3 times a week." *Id*. at ¶ 3, PageID # 9. He paused his signature collection only in mid-March of 2020. *Id*. at ¶ 6, PageID # 10. Plaintiff does not

2

indicate how many signatures he has collected to date. Instead, he states only that it is "doubtful [he] can meet the 5000 signature minimum[.]" *Id*. at ¶ 13, PageID # 11.

**III.     None of the orders issued by the Director of the Ohio Department of Health prohibited Plaintiff from circulating and collecting signatures on his petition.**

Speech that is protected by the First Amendment, such as the circulation of petitions, has been protected in every single order issued by the Director of the Ohio Department of Health. Pursuant to her authority in Ohio Revised Code § 3701.13, the Director has issued five orders to stymie the spread of COVID-19 in Ohio. And, starting with the very first order issued on March 12, 2020, the Director specifically carved out "the expression of First Amendment protected speech" from the list of prohibited activities. "Order to Limit and/or Prohibit Mass Gatherings in the State of Ohio," https://coronavirus.ohio.gov/static/publicorders/Director-of-Health-Gatherings-Order.pdf at ¶ 7 (last accessed June 1, 2020).[1] First Amendment protected speech was also exempted from the Director's March 17, 2020 Amended Order, her March 22, 2020 "Stay at Home Order," and her April 2, 2020 "Amended Stay at Home Order." "Amended Order to Limit and/or Prohibit Mass Gatherings and the Closure of Venues in the State of Ohio," https://coronavirus.ohio.gov/static/DirectorsOrderStayAtHome.pdf at ¶ 12g (last accessed June 1, 2020); "Order to Limit and/or Prohibit Mass Gatherings in the State of Ohio (Amended)," https://coronavirus.ohio.gov/static/publicorders/Amended-Director-of-Health-Gatherings-Order.pdf at ¶ 5 (last accessed June 1, 2020); "Amended Stay at Home Order," https://coronavirus.ohio.gov/static/publicorders/Directors-Stay-At-Home-Order-Amended-04-02-20.pdf at ¶ 12g (last accessed June 1, 2020).

---

[1] This Court may consider these orders on a motion to dismiss because they are referenced by and are integral to the Complaint and are public records. *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) ("In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice.").

3

And, when the Director issued an order for the re-opening of businesses, retail establishments, and other institutions by May 12, 2020, it, like the orders that preceded it, continued to specify that First Amendment speech is exempted from restrictions. "Director's Stay Safe Ohio Order," https://coronavirus.ohio.gov/static/publicorders/Directors-Stay-Safe-Ohio-Order.pdf at ¶ 4 (last accessed June 1, 2020). In fact, it elaborated on the exemption by stating that "First Amendment protected speech, including petition or referendum circulators, and any activity by the Media, which includes newspapers, television, radio and other media services" are not "prohibited activities." *Id*.

Thus, the exercise of speech protected by the First Amendment—including the circulation of petitions—has never been prohibited by the Director of the Ohio Department of Health or any other state agency or official. Recently, the Sixth Circuit Court of Appeals noted this fact in *Thompson v. DeWine*, 6th Cir. No. 20-3526, 2020 U.S. App. LEXIS 16650 (May 26, 2020). In *Thompson*, another division of this Court granted petitioners of ballot issues more time to collect signatures due to the restrictions caused by COVID-19. *Id*. at *16. In a *per curium* order granting a stay of that injunction pending appeal, the Sixth Circuit stated that "none of Ohio's pandemic response regulations changed the status quo on the activities [petitioners] could engage in to procure signatures for their petitions." *Id*. at *9. To be sure, none of these orders ever restricted individuals from circulating petitions and gathering signatures. *Id*. at *9-10.

Nevertheless, after a few weeks of restrictions—none of which prohibited Plaintiff from collecting signatures on his nominating petition—the stay-at-home order was rescinded on May 20, 2020. "Director's Order that Rescinds and Modifies Portions of the Stay Safe Ohio Order," https://coronavirus.ohio.gov/static/publicorders/Stay-Safe-Partial-Rescission.pdf (last accessed June 1, 2020). This leaves Plaintiff over ten weeks from the date of the rescission of the stay-at-

4

home order to the August 5, 2020 filing deadline to complete his signature collection that he began on July 31, 2019. Doc. 1, Duncan Aff. at ¶ 2, PageID # 9.

## IV. Plaintiff's allegations.

Plaintiff "alleges that Ohio's ballot access procedure, in combination with Governor DeWines (*sic.*) recent orders on the Covid 19 virus violates rights guaranteed to him by the 1st and 14th Amendments to the U.S. Constitution." Doc. 1, Compl., PageID # 1-2. He alleges that he cannot collect the required number of signatures to obtain ballot access in violation of his "freedom of speech and association. equal protection, and due process rights as guaranteed by the 1st and 14th Amendments, and as enforced by 42 USC Section 1983." *Id.* at ¶ 30, PageID # 7. He also alleges that his exclusion from the ballot will deprive him of his rights as a voter to an effective choice at the ballot. *Id.* at ¶ 35, PageID # 7-8.

The particular portion of Ohio's ballot access procedure he challenges is the signature requirement contained in Rev. Code § 3513.257. *Id.* at ¶¶ 11, 23-24, 26, 29, PageID # 3, 5-6. He seeks a declaration that "RC 3513.257 and other election laws are unconstitutional as applied to Duncan in his capacity as a candidate for President and as a qualified voter." *Id.* at Prayer for Relief (A), PageID # 8. He requests "an order requiring defendants to decrease the signature requirement, or place Duncan's name on the ballot upon his filing of the nominating petition with fewer than the required number of signatures." *Id.* at Prayer for Relief (C), PageID # 8.

According to the Complaint, Plaintiff started gathering signatures on or about July 31, 2019 and stopped mid-March of this year because of "comments from voters that it is not safe to be touching pens, etc. and being too close, and from Governor DeWine's and President Trump's orders on the Covid 19 virus." *Id.* at ¶ 19, PageID # 5. His Complaint states the incorrect legal conclusion that these orders "do not create an exception for political candidates." *Id.* at ¶ 20, PageID # 5. He alleges that he has collected "a substantial number" of signatures, but not

5

enough to obtain ballot access.  *Id.* at ¶ 14, PageID # 4.  He contends that enforcement of the statutory requirements in conjunction with the stay-at-home orders "make it virtually impossible for him to get his name on the ballot without causing both himself and his supporters to violate the governors (*sic.*) orders and face potential criminal charges."  *Id.* at ¶ 31, PageID # 7.

V.     Law and argument.

       A.     Motion to Dismiss Standard

The Secretary brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) provides for dismissal based on failure to state a claim.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts that, accepted as true, 'state a claim to relief that is plausible on its face.'"  *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 387 (6th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating a motion to dismiss under Rule 12(b)(6), the Court "must accept all of Plaintiffs' well-pleaded factual allegations as true and construe them in a light most favorable to Plaintiffs."  *Alshaibani v. Litton Loan Servicing, LP*, 528 Fed.Appx. 462, 463-64 (6th Cir. 2013).  The Court, however, need not accept "legal conclusions or unwarranted factual inferences," and "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations omitted).  "[F]actual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible."  *Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

6

**B. Because Plaintiff's alleged injury is not caused by any state action, he lacks standing.**

The essence of Plaintiff's Complaint is that COVID-19 has made it more difficult to gather the signatures he needs to obtain ballot access. As explained above, all COVID-19 orders that restrict activities or require social distancing have carved out First Amendment activities. So, simply put, these orders are not preventing, and never have prevented, Plaintiff from seeking signatures for his petition. Plaintiff has been free to gather signatures however he deems fit. Citizens have also been free to sign his petition. While the threat of COVID-19 may impact how Plaintiff and citizens exercise these freedoms and have made his signature gathering efforts more difficult, that is not an injury caused by any actor or state action. This means that Plaintiff does not have standing.

"[A] plaintiff seeking relief in federal court must first demonstrate that he has standing to do so." *Gill v. Whitford,* 138 S. Ct. 1916, 1923 (2018). To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of" and (3) a "likel[ihood]" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). Plaintiff cannot satisfy the second and third required elements for standing.

To satisfy the second standing requirement, "there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan,* 504 U.S. at 560 (quotation and citation omitted). Plaintiff alleges that he stopped gathering signatures in mid-March because of "comments from voters that it is not safe to be touching pens, etc., and being too close" and the stay-at-home-orders. Doc. 1 at ¶ 19, PageID # 5. As explained above, the COVID 19 orders never prevented Plaintiff from gathering

7

signatures and his allegations to the contrary are incorrect legal conclusions not entitled to a presumption of truth. This leaves Plaintiff with the allegations that voters commented that his signature gathering practices were not safe. But what voters believe about the safety of his efforts cannot be attributed to the Secretary or any other state actor. Thus, the challenged action of any defendant is not the cause of Plaintiff's injury.

Plaintiff also cannot establish redressability. This element requires that it "be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 561 (quotation and citation omitted). No decision from this Court can eliminate the threat COVID-19 poses or alleviate the concerns of private citizens who stay home or avoid contact with circulators. Plaintiff's alleged injury is, therefore, not redressable.

   **C.**  **Plaintiff also cannot establish the requisite state action.**

That the root cause of Plaintiff's alleged injury is COVID-19 also means that he cannot establish the requisite state action to support a Section 1983 claim. "First Amendment violations require state action." *Thompson,* 2020 U.S. App. LEXIS 16650, at *12, citing U.S. Const. amend. I ("*Congress* shall make no law . . . ." (emphasis added)); 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, *of any State* . . . ." (emphasis added)). In recently addressing similar claims, the Sixth Circuit explained that "we cannot hold private citizens' decisions to stay home for their own safety against the State." *Id.*. An Illinois district court also reached the same conclusion. *Morgan v. White*, No. 20 C 2189, 2020 U.S. Dist. LEXIS 86618, at *19 (N.D. Ill. May 18, 2020). *Morgan* noted that "during the COVID-19 pandemic, petition circulators will understandably be unwilling to seek out signatures, and potential supporters will be unwilling to venture out to sign them," but "[t]hese circumstances are caused by the virus itself, however, not by state law." *Id*. "It is only when *state law* prevents certain individuals from circulating petitions that First Amendment harms are

8

implicated." *Id.* (emphasis added). *See also Thomas v. Nationwide Children's Hosp.,* 882 F.3d 608, 612 (6th Cir. 2018) (affirming summary judgment against plaintiff because defendant, a private hospital, did not act under "color of state law"). Because Plaintiff's real issue is with COVID-19, not any state action, he has not alleged the requisite state action to state a Section 1983 claim.

### D. This Court does not have authority to grant the relief Plaintiff seeks.

Plaintiff asks for relief this Court has no authority to grant. He asks for a declaration that R.C. 3513.257 is unconstitutional as applied to him and also asks for an order that either decreases his signature requirement or that places him on the ballot when he files his nominating petition. Doc. 1 at Prayer for Relief (A), (C), PageID # 8. Obtaining an injunction, however, does him no good as enjoining the law that sets requirements for ballot access does not *grant* him ballot access. What Plaintiff really wants is an order from this court reducing his signature requirement. But that would require rewriting Ohio statutory law; the Sixth Circuit has twice recently concluded that federal courts do not have authority to grant such relief.

"[F]ederal courts have no authority to dictate to the States precisely how they should conduct their elections." *Thompson*, 2020 U.S. App. LEXIS 16650, at *15, quoting *Esshaki v. Whitmer,* No. 20-1336, 2020 U.S. App. LEXIS 14376, at *2 (6th Cir. May 5, 2020). "Federal courts can enter positive injunctions that require parties to comply with existing law. But they cannot 'usurp[] a State's legislative authority by re-writing its statutes' to create new law." *Id.*, at *16, citing *Esshaki*. In *Thompson*, the Sixth Circuit concluded that the district court exceeded its authority when it went beyond enjoining state law and "chose a new deadline and prescribed the form of signature the State must accept" for initiative petitions in light of the COVID-19 pandemic. *Id*.

In *Esshaki v. Whitmer,* the Sixth Circuit similarly concluded that the district court was

9

"not justified" and exceeded its authority when it ordered Michigan to reduce the number of signatures required for ballot access by fifty percent in light of the pandemic and Michigan's stay-at-home-orders. 2020 U.S. App. LEXIS 14376, at *4. *Esshaki* concluded: "Simply put, federal courts have no authority to dictate to the States precisely how they should conduct their elections." *Id.* at *4-5, citing *Clingman v. Beaver*, 544 U.S. 581, 586 (2005) ("The Constitution grants States broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices.").

Plaintiffs similarly ask this Court to reduce the number of signatures he must obtain under state law. That is precisely the type of relief *Thompson* and *Esshaki* conclude federal courts may not provide.

### E. Plaintiff's First Amendment challenge fails as a matter of law.

Even if this Court gets to the merits of Plaintiff's constitutional challenges, they fail as a matter of law. Ohio's requirement that Plaintiff obtain 5,000 valid signatures to appear on the ballot as an independent candidate for the office of president of the United States is constitutional under well-established precedent. This Court and the Sixth Circuit has already upheld Ohio's requirements for independent candidates to access the ballot. *Duncan v. Husted*, 125 F.Supp.3d 674 (S.D.Ohio 2015), *aff'd* 6th Cir. No. 15-4017 (Mar. 7, 2016) (Def. Ex. A). Nothing about the circumstances of the COVID-19 pandemic or the Director of Health's orders warrant a different outcome.

The standards for evaluating Plaintiff's challenge derive from *Anderson v. Celebrezze*, 460 U.S. 780, 786-87 (1983), and *Burdick v. Takushi*, 504 U.S. 428, 430 (1992). Under this framework, the level of scrutiny that applies to an election law "depends upon the extent to which [it] burdens" that right. *Burdick*, 504 U.S. at 434; *see also Anderson*, 460 at 789. That is,

10

the more severe the burden, the more rigorous the scrutiny. Heightened scrutiny is reserved for cases in which "the State" has "totally denied" the ability to exercise the asserted First Amendment right. *Mays v. LaRose*, 951 F.3d 775, 786 (6th Cir. 2020). Less-severe burdens get lesser scrutiny. For example, "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789)); *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). Moderate burdens, in turn, receive moderate scrutiny: laws subjected to moderate scrutiny "survive if the State's justifications for them outweigh" the harm they impose. *Mays*, 951 F.3d at 787. The Sixth Circuit has made clear that an evaluation of the burden must "consider[] all opportunities" affected people and organizations "had to exercise their rights." *Thompson*, 2020 U.S. App. LEXIS 16650, at *6, citing *Mays,* 951 F.3d at 785-86. Because Plaintiff's claims fail under *Anderson-Burdick* as a matter of law, they are properly disposed of on a motion to dismiss. *See Commt. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.*, 885 F.3d 443, 448 (6th Cir. 2018).

As this Court and the Sixth Circuit have already found, the burdens imposed by Ohio's statutes governing ballot access for independent candidates are not severe. *Duncan,* 125 F.Supp.3d at 681-82 ("the requirement that an independent candidate must collect 5,000 signatures in one year is not unduly burdensome on an independent's candidates' associational rights"); No. 15-4017 at 4 ("[O]n its face, the challenged statute imposes a reasonable burden on Duncan's free speech and associational rights.") (Ex. A). And they are amply justified by important state interest. "[T]he Supreme Court has held that the requirement that an independent candidate collect a reasonable number of nominating petition signatures within a reasonable

11

period of time in order to gain access to the ballot is justified by a state's legitimate interests in ensuring that independent political candidates can show a 'significant modicum of support' from the public, and in avoiding 'confusion, deception, and even frustration of the democratic process at the general election.'" *Duncan* 125 F.Supp.3d. at 686, citing *Jenness v. Fortson*, 403 U.S. 431, 442 (1971). Requiring a minimum number of signatures directly advances the recognized state interest in "avoid[ing] overcrowded ballots and protect[ing] the integrity of its political processes from frivolous or fraudulent candidacies." *Jolivette v. Husted*, 694 F.3d 760, 769 (6th Cir. 2012), citing *Bullock v. Carter*, 405 U.S. 134 (1972) (quotation omitted).

As this Court and the Sixth Circuit have also already concluded, "the Supreme Court has upheld much more burdensome nominating petition schemes than the one at issue here." *Duncan* 125 F.Supp.3d. at 681, citing *Jenness*, 403 U.S. at 438 (upholding Georgia statute that required non-party candidates to collect signatures equal to 5% of registered voters for that office from the last general election within a *180-day limit*); 6th Cir. No. 15-4017 at 3-4 (Def. Ex. A), citing *American Party of Texas v. White,* 415 U.S. 767 (1974) (upholding requirement that candidates 22,000 signatures in *55-days*); *Storer v. Brown*, 415 U.S. 724, 740 (1974) (upholding law requiring 325,000 signatures in 24 days). "Since *Jenness* and *White*, federal courts have frequently upheld similar signature-gathering schemes against constitutional challenges." *Duncan* 125 F.Supp.3d. at 683, citing *Nader v. Keith*, 385 F.3d 729, 735 (7th Cir. 2004) (upholding a 134-day time limit to gather 25,000 signatures, and listing other courts to have upheld similar schemes); *Nader v. Connor*, 332 F.Supp.2d 982, 985 (W.D.Tex. 2004) *aff'd*, 388 F.3d 137 (5th Cir. 2004) (upholding Texas' requirement that an independent candidate for president obtain 64,076 petition signatures over sixty-two days to merit a place on the general-election ballot).

On its face, Ohio law's requirement that independent candidates gather just 5,000 signatures over an entire year is clearly constitutional. The COVID-19 pandemic does not change this conclusion. In *Thompson v. DeWine,* the Sixth Circuit recently rejected a similar challenge to Ohio's ballot-initiative scheme based on claims that the pandemic and the stay-at-home orders rendered that scheme unconstitutional. 2020 U.S. App. LEXIS 16650. The district court granted an injunction against certain requirements to get an initiative on the ballot, but the Sixth Circuit granted a stay of that injunction pending appeal. *Id*. Like the ballot access requirements at issue here, the Sixth Circuit noted that it has "regularly upheld ballot access regulations like those at issue" in that case, which raised "the question of whether the COVID-19 pandemic and Ohio's stay-at-home orders increased the burden that Ohio's ballot-initiative regulations place on Plaintiffs' First Amendment rights." *Id.* at *7-8.

The Sixth Circuit concluded that nothing the State did with respect to the pandemic severely burdened plaintiffs. *Id.* at *9. Because the stay-at-home orders specifically exempted petition circulating, "Ohio's pandemic response regulations [did not] change[] the status quo on the activities Plaintiffs could engage in to procure signatures for their petitions." *Id*. Moreover, the fact that the *Thompson* plaintiffs still had five-weeks from the date the stay-at-home order was rescinded until their early and mid-July filing deadline "undermine[d] [their] argument that the state has excluded them from the ballot." *Id.* at *11. *Thompson* concluded: "Considering all opportunities Plaintiffs had, and still have, to exercise their rights. . ., Plaintiffs' burden is less than severe." *Id*.

The *Thompson* plaintiffs, and the Plaintiff here, had and have options to procure signatures under the circumstances of the pandemic. As the Sixth Circuit explained:

> There's no reason that Plaintiffs can't advertise their initiatives within the bounds of our current situation, such as through social or traditional media inviting

> interested electors to contact them and bring the petitions to the electors' homes to sign. Or Plaintiffs could bring their petitions to the public by speaking with electors and witnessing the signatures from a safe distance, and sterilizing writing instruments between signatures.

*Thompson,* at *11-12. Thus, "[b]ecause the State has not excluded Plaintiffs from the ballot, the burden imposed on them by the State's initiative requirements cannot be severe." *Id.* The Sixth Circuit concluded that the defendants were likely to prevail on the merits "[b]ecause the State's compelling and well-established interests in administering its ballot initiative regulations outweigh the intermediate burden those regulations place on Plaintiffs." *Id.* at *14.

*Thompson* compels dismissal of Plaintiff's claims here. Plaintiff has *more* time than the *Thompson* plaintiffs to gather his signatures as his nominating petition is not due until August 5. (In *Thompson,* they were due in early and mid-July.) And, even if Plaintiff was completely precluded from gathering signatures during the approximately two-month period various orders issued by Dr. Acton were in effect, that would still leave him with approximately ten months to gather his 5,00 signatures. That requires a number of signatures per day that is far below the more onerous schemes that have already been upheld, as explained above. *See* p. 13-14, *supra.* As the previous *Duncan* case noted, in response to Plaintiff's argument that "he only has seven months in which to gather the signatures due to poor weather conditions during five months of the year, the scheme still falls well within the constitutional boundaries outlined above." *Duncan* 125 F.Supp.3d at 683. If seven months is enough time, ten months surely clears the constitutional hurdle.

> F. **Because independent candidates are not similarly situated to partisan candidates, Plaintiff's equal protection claim fails.**

While it is not entirely clear, Plaintiff's equal protection challenge appears to be premised on the claim that he is being treated differently than party candidates because his signature requirements have not been relaxed, but the primary was moved. Doc. 1, Duncan Aff. ¶ 10-11,

14

PageID # 10-11 ("The defendants enforcement of the 5000 signature requirement is inconsistent in that they made it safer for the republican and democratic voters to nominate in their primary. However, when it comes to Independent voters, to nominate in their primary process they must in close contact sign a petition, and risk dying or infecting other people.")

Plaintiff also made an equal protection claim in his previous case based on differences in the manner in which independent candidates and party candidates obtain ballot access.  In that case, this Court concluded that "Plaintiff's equal protection claim fails, because that claim cannot stand merely on the ground that an independent candidate's path to the ballot is different than that of major party candidates."  *Duncan,* 125 F.Supp.3d at 684.  This is true because in order to prevail on an equal protection claim, a plaintiff must show "that the government treated the plaintiff 'disparately as compared to similarly situated persons.'"  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted).  As the Sixth Circuit concluded in Plaintiff's previous challenge, the law creates alternative paths to the ballot for independent and party candidates and, therefore, "independent candidate and partisan candidates are not similarly situated for purposes of election regulations."  *Duncan,* No. 15-4017 at 5, citing *Jolivette,* 694 F.3d at 771 (citing *Jenness,* 403 U.S. at 440-41).  Because of this, Plaintiff's "equal protection claim, therefore, do[es] not get off the ground." *Id.*  In other words, because the comparison of independent candidates to party candidates is an "apples to oranges" comparison, the comparison "does not fit into an equal protection analysis." *Miller v. Lorain County Bd. of Elections,* 141 F.3d 252, 258 (6th Cir. 1998), citing *Anderson v. Mills*, 664 F.2d 600, 607 (6th Cir. 1981).  This legal deficiency is fatal to Plaintiff's equal protection claim and it fails as a matter of law.

**VI.**     **Conclusion**

For the foregoing reasons, Defendant Secretary of State Frank LaRose respectfully requests that this Court to dismiss Plaintiff's claims against him.

                                                Respectfully submitted,

                                                DAVE YOST
                                                Ohio Attorney General

                                                */s/ Halli Brownfield Watson*
                                                HALLI BROWNFIELD WATSON (0082466)
                                                HEATHER BUCHANAN (0083032)
                                                Assistant Attorneys General
                                                Constitutional Offices Section
                                                30 E. Broad Street, 16th Floor
                                                Columbus, Ohio 43215
                                                Tel: 614-466-2872; Fax: 614-728-7592
                                                halli.watson@ohioattorneygeneral.gov
                                                heather.buchanan@ohioattorneygeneral.gov

                                                *Counsel for Defendant Secretary of State*
                                                *Frank LaRose*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendant Secretary of State Frank LaRose's Motion to Dismiss* was electronically filed and served by regular U.S. mail, on June 2, 2020 to the following:

Richard Duncan
1101 East Blvd
Aurora, OH 44202

*Pro se Plaintiff*

                                        */s/ Halli Brownfield Watson*
                                        HALLI BROWNFIELD WATSON (0082466)
                                        Assistant Attorney General