<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>

No. 15-4017

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

```
RICHARD DUNCAN,                    )
                                   )
    Plaintiff-Appellant,            )
                                   )  ON APPEAL FROM THE UNITED
v.                                 )  STATES DISTRICT COURT FOR
                                   )  THE SOUTHERN DISTRICT OF
JON HUSTED, Secretary of State,     )  OHIO
                                   )
    Defendant-Appellee.             )
```

> FILED
> Mar 07, 2016
> DEBORAH S. HUNT, Clerk

<u>O R D E R</u>

Before:  CLAY, GIBBONS, and STRANCH, Circuit Judges.

Richard Duncan, an Ohio resident proceeding *pro se*, appeals the district court's order and judgment granting summary judgment for the defendant in his civil rights action alleging violations of his First and Fourteenth Amendment rights under 42 U.S.C. § 1983.  This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed.  *See* Fed. R. App. P. 34(a).

On June 6, 2013, Duncan, an aspiring candidate in the 2016 presidential election, began collecting nominating petition signatures.  Duncan had previously gained non-party ballot access in the 2008 and 2012 presidential elections by collecting the required nominating petition signatures in the three years preceding each election's filing deadline.  Duncan funds his campaigns himself, spending less than $5,000 on each campaign, and personally collects all of the signatures necessary for his name to appear on the ballot.  He alleges that these characteristics are a "major theme" of his campaign and part of his appeal to voters, who "are tired of the ridiculous spending which occurs in [p]residential campaigns."  (R. 81, PageID 430.)

On June 21, 2013, Duncan received notice of the passage of Senate Bill 47, which amended Ohio Revised Code §§ 3513.262 and 3513.263 to require that independent presidential candidates collect the required nominating petition signatures no more than one year prior to the petition's filing date.

On November 18, 2013, Duncan filed a complaint against Ohio Secretary of State Jon Husted alleging that the one-year time limit for collecting signatures imposed by § 3513.263 violates his and his supporters' rights under the First and Fourteenth Amendments. Duncan sought declaratory and injunctive relief. On March 20, 2014, the district court denied Duncan's motion for a preliminary injunction. The parties filed cross-motions for summary judgment, and on August 26, 2015, the district court granted Husted's motion for summary judgment and denied Duncan's cross-motion for summary judgment.

On appeal, Duncan challenges the district court's summary judgment order on the grounds that the challenged statute, as applied to Duncan, violates his free speech and associational rights under the First and Fourteenth Amendments and his right to equal protection under the Fourteenth Amendment.

We review *de novo* a district court's decision on a motion for summary judgment, and view the facts and reasonable inferences drawn therefrom in the non-movant's favor. *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 476 (6th Cir. 2010); *Jones v. Muskegon Cty.*, 625 F.3d 935, 940 (6th Cir. 2010). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must demonstrate "the absence of a genuine issue of material fact as to at least one essential element on each of [the plaintiff's] or [non-movant's] claims," at which point the non-movant "must present sufficient evidence from which a jury could reasonably find for him." *Jones*, 625 F.3d at 940.

"The Supreme Court has developed a three-part test to evaluate election statutes challenged under the First and Fourteenth Amendments." *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 692 (6th Cir. 2015) (citing *Burdick v. Takushi*, 504 U.S. 428, 434, 441 (1992);

*Anderson v. Celebrezze*, 460 U.S. 780, 788–89 (1983)). We "must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Anderson*, 460 U.S. at 789. We "then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* Finally, we must "determine the legitimacy and strength of each of those interests" and "consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.*

The level of scrutiny applicable to a challenged election statute "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. "When the burden . . . is 'severe,' the statute will be subject to strict scrutiny and must be narrowly tailored and advance a compelling state interest." *Green Party of Tenn.*, 791 F.3d at 693 (citing *Burdick,* 504 U.S. at 434). However, "[i]f the burden is 'reasonable' and 'nondiscriminatory,' the statute will be subject to rational basis and survive if the state can identify 'important regulatory interests' to justify it." *Id.* (citing *Burdick*, 504 U.S. at 434). "For the majority of cases falling between these extremes," *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 592 (6th Cir. 2012), we "will 'weigh[] the burden on the plaintiffs against the state's asserted interest and chosen means of pursuing it.'" *Green Party of Tenn.*, 791 F.3d at 693 (citation omitted).

Duncan argues that § 3513.263 violates his rights of free speech and association secured by the First and Fourteenth Amendments. As the district court noted, the Supreme Court has found reasonable election statutes that impose significantly more onerous time constraints on collecting nominating petition signatures than does § 3513.263. *See, e.g.*, *Am. Party of Tex. v. White*, 415 U.S. 767, 783 (1974) (upholding a statute requiring collection of 22,000 signatures in 55 days); *Jenness v. Fortson*, 403 U.S. 431, 433, 438 (1971) (upholding a statute requiring collection of signatures equal to 5% of registered voters within 180 days); *see also, e.g.*, *Storer v. Brown*, 415 U.S. 724, 740 (1974) (finding that, standing alone, a statute requiring collection of 325,000 signatures in 24 days would not impose "an impossible burden"); *Nader v. Keith*, 385

F.3d 729, 733–35 (7th Cir. 2004) (upholding a statute requiring collection of 25,000 signatures in 134 days). Thus, on its face, the challenged statute imposes a reasonable burden on Duncan's free speech and associational rights. *See Burdick*, 504 U.S. at 434. Duncan nevertheless argues that, as applied to him, the challenged statute imposes a severe burden by forcing him to abandon his low-cost campaign strategy, which in turn will cause him to lose the support of voters who would otherwise support him on the basis of his low-cost campaign and personal solicitations of support. He has failed to show, however, that the statute would impede his ability to recruit local volunteers to help collect signatures without cost. "[H]ard work and sacrifice by dedicated volunteers are the lifeblood of any political organization," *Am. Party of Tex.*, 415 U.S. at 787, and the right of access to the ballot does not entitle Duncan to the "more generalized expressive function" of styling his campaign as a "walking tour." *Burdick*, 504 U.S. at 438. Accordingly, even as applied to Duncan, the burden imposed by the challenged statute is not severe. *See id.* at 438–39. And, in light of Ohio's "important regulatory interests" in ensuring that a non-party candidate has sufficient current support before granting him access to the ballot, the challenged statute passes constitutional muster. *See id.* at 434.

Duncan also challenges § 3513.263 under the Equal Protection Clause of the Fourteenth Amendment. We examine equal protection challenges to election statutes using the same balancing framework as First Amendment challenges. *See Green Party of Tenn.*, 791 F.3d at 692. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1, "which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, to prevail on an equal protection claim, a plaintiff must show "that the government treated the plaintiff 'disparately as compared to similarly situated persons.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted).

Duncan first argues that § 3513.263 violates his right to equal protection by placing an undue burden on him and other independent candidates that it does not place on partisan

candidates. Ohio's statutory framework requires partisan candidates to win the majority of votes in a primary election. *See Jolivette v. Husted*, 694 F.3d 760, 771 (6th Cir. 2012). Independent candidates, by contrast, are "excused from this process, and thus different restrictions for their access to the ballot are permissible." *Id.* Specifically, they must gather 5,000 signatures no more than one year prior to the nominating petition's date of submission. These represent "two alternative paths" to the ballot, *Jenness*, 403 U.S. at 441, and, accordingly, "independent candidates and partisan candidates are not similarly situated for purposes of election regulations," *Jolivette*, 694 F.3d at 771 (citing *Jenness*, 403 U.S. at 440–41). Duncan's first equal protection claim, therefore, "do[es] not get off the ground." *See id.*

Duncan also argues that § 3513.263 violates his right to equal protection by invidiously discriminating against him on the basis of wealth, because the one-year time limit will require him to apportion additional funding for his campaign, and, due to his economic status, Duncan predicts that this required additional funding may prove prohibitive to his campaign. The Supreme Court has held that "a candidate who establishes that he cannot pay [a] filing fee required for a place on the primary ballot may be required to demonstrate the 'seriousness' of his candidacy by persuading a substantial number of voters to sign a petition in his behalf." *Lubin v. Panish*, 415 U.S. 709, 718–19 (1974). The Supreme Court has thus endorsed nominating signature petition requirements as an appropriate alternative to election procedures that would otherwise restrict an indigent candidate's access to the ballot. *See id.* Moreover, Duncan fails to explain why compliance with § 3513.263 would necessarily increase the costs associated with his campaign. Therefore, Duncan's second equal protection claim similarly lacks merit.

For these reasons, we **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: March 07, 2016

Mr. Richard Duncan
1100 East Boulevard
Aurora, OH 44202

Ms. Ryan Lynn Richardson
Office of the Attorney General
of Ohio
30 E. Broad Street
17th Floor
Columbus, OH 43215

Re: Case No. 15-4017, *Richard Duncan v. Jon Husted*
Originating Case No. : 2:13-cv-01157

Dear Sirs,

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Robin Baker
Case Manager
Direct Dial No. 513-564-7027

cc:  Mr. Richard W. Nagel
     Ms. Halli Brownfield Watson

Enclosure

Mandate to issue

Exhibit A, p | 6